Richard E. ARMSTRONG, as administrator of the estate of Jeri Williams, deceased, et al., Plaintiffs-Appellees,

v.

ALABAMA POWER COMPANY, Defendant and Third Party Plaintiff-Appellant,

v.

UNITED STATES of America, Marine Builders, Inc., Bangor Punta Marine, Third Party Defendants-Appellees.

Virgie Mae LAMB and Richard E. Armstrong, as joint administrators of the estate of David L. Williams, deceased, et al., Plaintiffs-Appellees,

v.

ALABAMA POWER COMPANY, Defendant and Third Party Plaintiff-Appellant,

v.

UNITED STATES of America, Marine Builders, Inc., and Bangor Punta Marine, Third Party Defendants-Appellees.

ALABAMA POWER COMPANY, Plaintiff-Appellant,

v.

UNITED STATES of America, et al., Defendant-Appellee.

Nos. 80–9008, 81–7288.

United States Court of Appeals, Eleventh Circuit.

Feb. 18, 1982.

Balch, Bingham, Baker, Hawthorne, Williams & Ward, Edward S. Allen, Birmingham, Ala., Inge, Twitty, Duffy & Prince, James J. Duffy, Jr., Carroll H. Sullivan, Mobile, Ala., for Alabama Power Co.

Thomas L. Jones, Edward J. Vulevich, Jr., Dept. of Justice, Civ. Div., Torts Branch, Washington, D. C., for the U. S.

Frank G. Taylor, Mobile, Ala., for Marine Builders.

Alex T. Howard, Jr., Mobile, Ala., for C. Raymond Hunt Associates and Bangor Punta Marine.

John T. Crowder, Jr., W. Boyd Reeves, Robert T. Cunningham, Jr., Mobile, Ala., for Armstrong and Lamb.

Before THORNBERRY *, FAY and HATCHETT, Circuit Judges.

THORNBERRY, Circuit Judge:

In these cases, appellant raises important questions about the allocation of jurisdiction between federal and state courts in removal cases and about the justiciability of anticipatory claims for contribution and indemnity. Specifically, appellant asks this Court to decide when a defendant may remove a maritime "saving to suitors" case to federal court; appellant also asks us to determine when a contribution and indemnity suit in anticipation of liability becomes ripe for adjudication. For the reasons discussed below, we agree with the district courts' answers to these questions and affirm their decisions.

## I. The Facts

On May 6, 1979, David and Jeri Williams were killed when the mast of their sailboat touched an overhead power line owned by Alabama Power Company (APCo). Their

---

* Honorable Homer Thornberry, Circuit Judge for the United States Court of Appeals for the Fifth Circuit, sitting by designation.

daughter Jennifer was injured in the same accident. Subsequently, two cases were filed against APCo by David's estate for his wrongful death and by Jeri's estate for her wrongful death and for Jennifer's injuries. These cases were brought in the Circuit Court of Mobile County (Alabama) under the "saving to suitors" clause of 28 U.S.C. § 1333 (1966).[1]

In its answer, APCo filed a third-party complaint against the United States for its alleged failure to mark APCo's power line on the applicable navigation charts. This claim was brought under the Suits in Admiralty Act, 46 U.S.C. § 741 et seq. (1975), which is the relevant exception to the United States' general sovereign immunity. However, the Suits in Admiralty Act provides for exclusive jurisdiction in federal district court; the United States therefore could not properly be joined in the state court action. Unfortunately, the United States, rather than moving to dismiss APCo's claim, removed the cases to federal court.

The federal district court eventually requested briefs and arguments concerning the propriety of removal. The court decided that the state court did not have jurisdiction over the United States; it therefore dismissed the United States from the cases. Concommitantly, the court found that the state court's lack of jurisdiction rendered void the federal court's derivative removal jurisdiction; it therefore remanded the cases to state court.

While this puzzle unfolded, APCo filed two more cases in federal district court seeking indemnification and contribution from the other parties in the original damages suits. The district court dismissed the two cases as premature, because liability in the damages suits had not yet been litigated.[2]

## II.   No. 80–9008:   Removal Jurisdiction

At the outset, we note that Congress has prohibited appellate review of a federal district court's remand order. Title 28, U.S.C. § 1447 (d) provides quite strictly that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise. . . ."[3]

█ But this Court may review the district court's order dismissing the United States as a party to the damages suits. "[I]n logic and in fact the decree of dismissal preceded that of remand and was made by the District Court while it had control of the cause. Indisputably this order is the subject of an appeal. . . ." Waco v. United States Fidelity & Guaranty Company, 293 U.S. 140, 143, 55 S.Ct. 6, 7, 79 L.Ed.2d 244 (1934). See Southeast Mortgage Company v. Mullins, 514 F.2d 747 (5th Cir. 1975).

█ We find that the district court properly dismissed the United States. We reach this conclusion because of the derivative nature of removal jurisdiction: the jurisdiction of a federal court over a removed case can be no greater than that of the state court whence the case came; the state court here had no jurisdiction over the United States because of the Suits in Admiralty Act's exclusive federal jurisdiction; therefore, the federal district court received no jurisdiction over the United States on removal.

APCo agrees that the state court had no jurisdiction over the United States, but argues that the Suits in Admiralty Act provided an independent basis for federal jurisdiction sufficient to allow removal. This argument leads across treacherous waters; indeed, as Professor Wright notes, "the subject of the removability of saving clause cases is beset by theoretical difficulties that cannot be resolved by reference to the cases, which are in a confused state, or by exploring the inferences of history." C. Wright, A. Miller & E. Cooper, Federal

---

1. Eventually these cases were consolidated; they are appealed as Docket No. 80–9008.

2. Again, these cases were consolidated and are appealed as Docket No. 81–7288.

3. Because the district court here dismissed the cases for lack of jurisdiction, the statute's limited exception—recognized in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976)—does not apply.

Practice and Procedure: Jurisdiction § 3674, at 303 (1976). We are convinced, though, that the Supreme Court has provided some guidance in *Romero v. International Terminal Operating Company*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). In *Romero*, the Court decided that a general maritime claim—as is involved in this case—does not arise under the Constitution, laws, or treaties of the United States for purposes of federal question jurisdiction. Thus, under the reasoning of *Romero*, a federal district court should not accept the removal of a saving clause case solely because of its general maritime nature: the maritime nature simply does not provide a ground for federal jurisdiction.

But this does not answer APCo's argument that the court should accept removal when the saving clause case also contains an independent basis for federal jurisdiction —namely, diversity of citizenship or another federal question. Although logic seems to compel an affirmative answer to APCo's theoretical argument, we need not reach so far to decide the case before us. We find that even if a saving clause case becomes removable by virtue of an independent federal question, the instant case does not contain such an independent federal question. APCo's attempt to join the United States in the saving clause case by invoking the Suits in Admiralty Act did not, and could not, state a separate federal claim in the case, because the Suits in Admiralty Act does not allow the joinder of the United States in a state court suit. In other words, the Act's exclusive federal jurisdiction absolutely precluded the state court's exercise of jurisdiction over the United States and thus prevented any independent federal claim from arising in the state court suit. The federal district court therefore acquired no derivative jurisdiction over the United States upon removal.[4]

### III. No. 81–7288: Ripeness

■ The federal district court also properly dismissed APCo's contribution and indemnity suits as premature. We agree with the Fourth Circuit in *A/S Ludwig Mowinckles Rederi v. Tidewater Construction Corp.*, 559 F.2d 928 (4th Cir. 1977):

> Whether an indemnification issue is ripe for adjudication depends on the facts and circumstances of the case under consideration. Here, there has been neither a determination of liability nor a settlement in any of the personal injury or wrongful death actions pending against [appellant] in the district court or state courts. We cannot tell at this time what the outcome of those actions will be.... To award, in this action, indemnification against all liability and expenses, incurred or which may be incurred by [appellant] in those actions, could lead to incongruous results. The fact that [appellant has] already incurred some expenses in defending those actions does not make ripe [the] claims for indemnification against all potential liability and expenses.

559 F.2d at 932. The additional factor in this case—that the federal district court is the only forum able to join all parties, including the United States—perhaps counsels for hearing APCo's claims in federal court, but it does not reveal reversible error in the district court's determination on the

---

4. We realize that this strictly derivative view of removal jurisdiction may seem overly technical, at least to the layperson. Why, one might ask, should the federal district court dismiss a claim that clearly could have been brought there in the first instance? The answer lies in the nature of removal jurisdiction—which is simply a method of transferring into federal court *a state court suit containing a federal jurisdictional ground*. It also lies in the balance between federal and state judicial power—a balance that requires the federal courts to give "[d]ue regard for the rightful independence of state governments" and to "scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Romero v. International Terminal Operating Company, supra*, 358 U.S. at 380, 79 S.Ct. at 484, 3 L.Ed.2d at 386. Finally, in the context of saving clause cases and especially when the ground for removal is not contained in the plaintiff's own complaint, it preserves the plaintiff's right to choose a state forum. To serve these purposes, the federal courts must carefully scrutinize the bounds of removal jurisdiction, even to the point of apparently impractical detail—for these details in the given case eventually guarantee higher goals in all cases.

facts of this case. In any event, APCo's claims are not prejudiced by this dismissal, since the statute of limitations will not even begin to run until the state court enters judgment against APCo in the damages suits. We therefore concur with the Fourth Circuit and conclude that a ruling on contribution and indemnification in the setting presented to the district court was premature.

### IV. Conclusion

For the foregoing reasons, we affirm the dismissal of the United States as a party in the damages suits, No. 80–9008, and the dismissal of APCo's suits for contribution and indemnification, No. 81–7288. All other issues raised in the appeal docketed as No. 80–9008 are left to the determination of the state court on the remand from the federal district court.

AFFIRMED.