Charles POWERS, Marguerite Powers, Appellees,

v.

The SOUTHLAND CORPORATION t/a 7–Eleven; Robert Yeager, Appellants.

No. 92–1562.

United States Court of Appeals, Third Circuit.

Argued Jan. 28, 1993.

Decided Aug. 23, 1993.

Sur Petition for Rehearing Sept. 24, 1993.

---

\* Hon. Collins J. Seitz was limited to voting for panel rehearing.

John P. McShea, III (argued), Hoyle, Morris & Kerr, Philadelphia, PA, for Charles and Marguerite Powers.

Kim E. Plouffe (argued), German, Gallagher & Murtagh, Philadelphia, PA, for The Southland Corp. and Robert Yeager.

Before: BECKER, ALITO, Circuit Judges, and ATKINS, District Judge.*

* Honorable C. Clyde Atkins, United States District Judge for the Southern District of Florida, sitting by designation.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This seemingly routine slip and fall case presents a difficult and somewhat novel question of appellate jurisdiction. Plaintiff Charles Powers, who sustained personal injuries in a 7–Eleven store, brought suit with his wife Marguerite Powers in state court against The Southland Corporation, which owns the 7–Eleven name and both operates and franchises 7–Eleven stores. Southland removed the action to federal court. Southland and its franchisee, Robert Yeager, appeal from an order of the district court granting the motion of plaintiffs for leave to amend their complaint to add Yeager as a defendant under a relation back theory, even though the statute of limitations governing the action against Yeager had expired prior to the motion to amend. Because the addition of Yeager destroyed diversity jurisdiction, 28 U.S.C. §§ 1332, 1441, the district court's order also remanded the case to state court.

The plaintiffs submit that it was proper for the district court to remand the case with Yeager installed as a defendant. More importantly for present purposes, they argue that, irrespective of the propriety of the district court's order, we lack jurisdiction over the present appeal. Yeager and Southland, while not contesting the remand, respond that we have jurisdiction and that the district court erred in permitting the relation back amendment.

Before we can review the merits of the district court's order, we must first determine our jurisdiction. The defendants concede that 28 U.S.C. § 1447(d) bars our review of the remand portion of the order, but they submit that the portion of the order granting the motion for a "relation back amendment" under Fed.R.Civ.P. 15(c) is, for purposes of review, separable from the remand under the holding in *City of Waco v. United States Fidelity & Guar. Co.,* 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934), and that under this theory remand is not barred by 28 U.S.C. § 1447(d). We agree. But we must

still dismiss the appeal for lack of appellate jurisdiction (over defendants' opposition) because the portion of the order allowing the relation back amendment was not final within the meaning of 28 U.S.C. § 1291. We reach this conclusion because we are aware of no doctrine that would bar the state courts from reviewing the district court's decision, and hence that decision will both have no preclusive effect on the parties and may be effectively reviewed by the state appellate courts. Since the present appeal is interlocutory, it will be dismissed for lack of appellate jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs, both residents of Pennsylvania, filed this action against Southland in the Court of Common Pleas of Montgomery County, Pennsylvania. The case arises from personal injuries Mr. Powers sustained when he slipped and fell while inside a 7–Eleven store in North Hills, Pennsylvania, on April 9, 1990. The original complaint, which was filed on February 20, 1992, alleged that Southland was negligent in failing to maintain the property in a condition free from hazardous or dangerous conditions—specifically, that the floor was allowed to remain wet after mopping without warning customers or taking other preventive measures to eliminate the hazard. On March 24, 1992, Southland, a Texas corporation with its principal place of business in Texas, removed the action to the United States District Court for the Eastern District of Pennsylvania on diversity grounds.

On April 20, 1992, plaintiffs' counsel learned for the first time that the store in which Powers had fallen was not owned by Southland, but instead was owned by a franchisee, Robert Yeager.[1] On April 21, 1992, the plaintiffs notified Yeager by certified mail that they had sued Southland and that they intended to amend their complaint to name Yeager as a co-defendant. On April 29, 1992, the plaintiffs mailed a copy of the proposed amended complaint to Yeager as specific notice of the plaintiffs' intent to add Yeager as a defendant. The only substantive change to the complaint was the addition of Yeager.

On April 30, 1992, twenty-one days after the expiration of Pennsylvania's two year statute of limitations for personal injury actions, *see* 42 Pa.Cons.Stat.Ann. § 5524(2) (West Supp.1993), the plaintiffs moved for leave to amend the complaint. The district court, in a memorandum opinion and order filed on June 15, 1992, granted the motion and permitted the amendment to relate back to the date on which the original complaint was filed, pursuant to Fed.R.Civ.P. 15(c). The court reasoned that the claim against Yeager arose from the same transaction; that there was nothing actually known to the plaintiffs that put them on notice that Southland was not the sole responsible party; that they were diligent in seeking to amend once they had learned of Yeager's possible responsibility; and, finally, that because Southland and Yeager had such a strong commonality of interests, notice to one should have constituted notice to the other. *See Powers v. The Southland Corp.*, No. 92–1717, slip op. at 3–7, 1992 WL 150695 (E.D.Pa. June 15, 1992).

1. With regard to the plaintiffs' misapprehension that Southland was the sole responsible party, the relevant facts are as follows. After he fell, Powers notified the store manager of the accident. The store manager informed Powers that he should report the accident to Southland's district office, and provided him with the phone number. When Powers called the number given him, he spoke with a Southland employee (Debbie Shaffer) who asked him a number of questions about the accident and told Powers that he should report the accident to Southland's insurer, Kemper Insurance Company. Powers later received three letters from Kemper, each of which referred to the insured as "Southland Corporation" or "Southland Corporation/7–Eleven."

It was at this point that the Powers filed the complaint naming only Southland as a defendant.

On April 17, 1992, plaintiffs' counsel called Southland's attorney to determine whether Southland's general denial in its Answer included denying that Southland had responsibility for maintaining the store premises where Powers was injured. Southland's attorney informed plaintiffs' counsel that a franchisee, not Southland, was responsible for maintaining the inside of the store. At the time, however, Southland's attorney was not sure of the franchisee's identity. On April 20, 1992, plaintiffs' counsel was informed by Southland that Robert Yeager was the franchisee in question.

The plaintiffs thus were able, because of the relation back, to add Yeager as a defendant even though the statute of limitations had expired by the time the motion to amend was filed.

The district court went on to hold, however, that the addition of Yeager, who is a resident of Pennsylvania, destroyed the court's diversity jurisdiction. *Id.*, slip op. at 7. In response to Southland's argument that the court could not destroy its jurisdiction in this manner, the court pointed to 28 U.S.C. § 1447(e), which gives the court discretion to join a party even though joinder would destroy subject matter jurisdiction. Applying a general equities analysis, the court found that allowing joinder that would necessitate remand was proper here because the plaintiffs were not joining the party as a means of destroying jurisdiction; rather, they had bona fide claims against both defendants. *Id.*, slip op. at 7–8. Thus, in a single order the district court granted the motion for the relation back amendment to add Yeager and, because Yeager's joinder destroyed diversity (federal subject matter jurisdiction), remanded the case to the state court.[2]

## II. APPELLATE JURISDICTION

The plaintiffs advance two alternative arguments asserting lack of appellate jurisdiction. First, they contend that consideration of any portion of the district court's order is barred by 28 U.S.C. § 1447(d), which provides:

> An order remanding a case to the State court from which it was removed is not

reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.[3]

Second, they submit that even if § 1447(d) does not prohibit our review of the district court's decision to allow the relation back amendment, we nevertheless lack jurisdiction because that decision was not a final order within the meaning of 28 U.S.C. § 1291.

A. Is Review of the District Court's Decision Permitting the Relation Back Amendment Barred by 28 U.S.C. § 1447(d)?

■ It is well established that an order of remand is not reviewable except for certain narrow exceptions. *See Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976); *see also Aliota v. Graham,* 984 F.2d 1350, 1354–55 (3d Cir. 1993), *petition for cert. filed,* 61 U.S.L.W. 3820 (U.S. May 19, 1993) (No. 92–1863); *In re TMI Litig. Cases Consol. II,* 940 F.2d 832, 840–42 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992). The defendants concede that the remand portion of the district court's order is not reviewable. However, relying on *City of Waco v. United States Fidelity & Guar. Co.,* 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934), they submit that notwithstanding 28 U.S.C. § 1447(d), we may review the portion of the court's order permitting the relation back amendment because that decision preceded, and therefore is severable from, the remand decision.[4] In addressing this argument, we

---

**2.** The court later entered two additional orders. The first order (June 18, 1992) amended the memorandum opinion to correct a clerical error—the court had mistakenly referred to Mr. Yeager when it meant to refer to the plaintiffs. The second order (June 23, 1992) amended the remand order to correct a separate clerical error—the original order had mistakenly remanded the case to the Philadelphia Court of Common Pleas when it should have been remanded to the Montgomery County Court of Common Pleas.

**3.** There is no suggestion, and none could be made, that 28 U.S.C. § 1443, which provides for the removal of certain actions involving civil rights, is applicable here.

**4.** The plaintiffs contend that the holding of *City of Waco* was superseded by the enactment of 28

U.S.C. § 1447(d) in 1949. *See* Act of May 24, 1949, ch. 139, § 84, 63 Stat. 89, 102 (1949), and as such is no longer good law. This argument, however, is clearly without merit. First, there is nothing in *City of Waco* that is inconsistent with § 1447(d). Thus, there is no reason to view it as having been overruled or superseded by the adoption of § 1447(d). Second, § 1447(d) merely codified the existing law that remand orders were unreviewable, *see* H.Rep. No. 352, 81st Cong., 1st Sess. 15, *reprinted in* 1949 U.S.C.C.A.N. 1254, 1268 (1949), which "has been the established rule under § 1447(d) and its predecessors stretching back to 1887." *Thermtron Prods.,* 423 U.S. at 343, 96 S.Ct. at 589; *see also id.* at 345–49, 96 S.Ct. at 590–92 (tracing the history of § 1447(d)); *In re TMI Litig.,* 940 F.2d at 839–40 (same). Moreover, courts have consis-

must determine whether, as in *City of Waco*, the decision allowing the relation back amendment is severable, both "in logic and fact," from the remand.

The underlying cause of action in *City of Waco* was a suit by Curtis Boggs against the City of Waco, Texas, and its contractor, Combs & Glade, for damages Boggs allegedly suffered in a collision with a street obstruction. By way of a "cross-action," the City of Waco brought the Fidelity Company into the suit, alleging that Fidelity "was liable under the bond to pay whatever amount might be adjudged due by the City by reason of the fault of the contractors [co-defendant Combs & Glade]." *City of Waco*, 293 U.S. at 141, 55 S.Ct. at 6. Fidelity removed the case to federal court, where Boggs filed a motion asking for a variety of relief, including that the case as a whole be remanded or that the case against Fidelity be dismissed and then the remainder of the case be remanded to state court. *Id.* at 141–42, 55 S.Ct. at 6–7. The district court entered a single order which resolved three separate issues. The court first denied Boggs' motion to remand the entire case. However, it went on to consider and grant the motion to dismiss the cross-complaint, finding "that as to the plaintiff's cause of action the Fidelity Company was an unnecessary and improper party." Since upon dismissal there was no longer diversity of citizenship, the court remanded the remainder of the case to state court on the ground that it no longer had jurisdiction. *Id.* at 142, 55 S.Ct. at 7.

The City of Waco appealed the order dismissing the Fidelity Company, but not the remand. The court of appeals nevertheless dismissed the appeal "holding that, as no appeal lies from an order of remand, the cause was irrevocably out of the District Court, the action of that court in dismissing the city's cross-action was moot, and its pro-

priety could not be reviewed." *Id.* at 142–43, 55 S.Ct. at 7.[5] The Supreme Court reversed, holding that review should be permitted of the dismissal that led to the remand:

The record contradicts th[e] statement [that the District Court remanded "all matters concerning the entire controversy"]. If the District Court's order stands the cross-action will be no part of the case which is remanded to the state court. Indeed, if the District Court was right, the cause could not have been remanded except for the exclusion of the Fidelity Company as a party. True, no appeal lies from the order of remand; but in logic and in fact the decree of dismissal preceded that of remand and was made by the District Court while it had control of the cause. Indisputably this order is the subject of an appeal; and, if not reversed or set aside, is conclusive upon the petitioner.

.... A reversal cannot affect the order of remand, but it will at least, if the dismissal of the petitioner's complaint was erroneous, remit the entire controversy, with the Fidelity Company still a party, to the state court for such further proceedings as may be in accordance with law.

*Id.* at 143–44, 55 S.Ct. at 7.

▪ The question before us is thus whether, as in *City of Waco*, the decision to allow the relation back amendment adding Yeager as a defendant "in logic and in fact ... preceded ... the remand and was made by the District Court while it had control of the cause." *Id.* at 143, 55 S.Ct. at 7. This inquiry appears simple, for as a logical matter the decision to allow the addition of Yeager had to have preceded the decision to remand, and the remand was premised on the destruction of diversity, which only occurred upon Yeager's inclusion in the suit. This approach, however, is too simplistic. If this

tently applied *City of Waco* in the years since the enactment of § 1447(d). *See, e.g., Aliota*, 984 F.2d at 1353; *Armstrong v. Alabama Power Co.*, 667 F.2d 1385, 1387 (11th Cir.1982).

**5.** The opinion of the court of appeals more fully explains its reasoning:

An order sustaining the demurrer to and striking out a pleading, or dismissing a cause of action, is ordinarily appealable.

The order complained of here would be, but for the fact that the entry of the remanding order rendered the order appealed from ineffective for want of jurisdiction, made moot all further proceedings in the federal court, and left the cause to stand and continue in the state court as though it had not been removed.

*City of Waco v. United States Fidelity & Guar. Co.*, 67 F.2d 785, 786 (5th Cir.1933).

logical "but for" approach were to be followed, the rule of *City of Waco* would all but swallow the general prohibition of 28 U.S.C. § 1447(d). Accordingly, we conclude that the decision to allow the relation back amendment, in addition to being logically precedent, must also be separable from the remand decision.

If the court looks to an issue *for the purpose of* determining subject matter jurisdiction, the issue is not separable because it cannot be said to have preceded the remand decision "in logic *and in fact.*" *City of Waco*, 293 U.S. at 143, 55 S.Ct. at 7 (emphasis added). If, however, as in *City of Waco*, the issue has independent relevance in adjudging the rights of the parties (i.e., relevance beyond determining the existence of federal subject matter jurisdiction), the decision is separable and falls within the reasoning of *City of Waco*—even if it also happens to have an incidental effect on the court's jurisdiction. *Cf. Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1388 (9th Cir.1989) ("Blue Cross fails to demonstrate how the district court's legal decision was *apart* from the question of subject matter jurisdiction.... The district court's decision that Hansen's plan was not subject to ERISA, rather than being apart from the question of subject matter jurisdiction, was necessary to determine whether such jurisdiction existed.") (emphasis in original); *Glasser v. Amalgamated Workers Union Local 88*, 806 F.2d 1539, 1540 (11th Cir.1986) ("[T]he decision underlying the remand order involved a conclusion of substantive law. However, ... the substantive law decision related to the question of jurisdiction; the remand order did not affect the substantive rights of the parties.").

We conclude that the district court's decision to permit the amendment of the complaint by application of the relation back doctrine in this case is separable from the decision to remand. A review of the court's analysis demonstrates that the court gave thorough independent consideration to the appropriateness of the relation back amendment. The court's decision that the amendment would relate back, because it effectively allows the plaintiffs to sue Yeager after the state statute of limitations expired, has sig-

nificant ramifications beyond determining whether or not the district court had jurisdiction over the present case. *Cf. Glasser*, 806 F.2d at 1540 ("[H]ere the substantive law decision related to the question of jurisdiction; the remand order did not affect the substantive rights of the parties. In particular, the court did not reach the merits of the preemption argument.").

Our conclusion in the present case is supported by our recent decision in *Aliota v. Graham*, 984 F.2d 1350 (3d Cir.1993), *petition for cert. filed*, 61 U.S.L.W. 3820 (U.S. May 19, 1993) (No. 92–1863). In *Aliota*, the plaintiffs sued a number of federal employees alleging slander and conspiracy. *Id.* at 1352. The case was removed to federal court and, upon the Attorney General's certification that the employees were acting within the scope of their employment, the United States was substituted for the individual defendants pursuant to 28 U.S.C. § 2679(d). *Id.* at 1352, 1355. In response to a motion by the plaintiffs, the district court entered an order finding that none of the employees had been acting within the scope of their employment, resubstituted the individual defendants for the United States, and remanded the case to the state court. *Id.* at 1352.

The first question we addressed in *Aliota* was whether 28 U.S.C. § 1447(d) barred our review of the resubstitution order. Applying the reasoning of *City of Waco*, we concluded that review was not barred because the resubstitution decision, while the impetus behind the remand, was "separate from and logically precede[d] the question of remand." *Id.* at 1353. The present case is essentially indistinguishable. *See also Mitchell v. Carlson*, 896 F.2d 128, 132–33 (5th Cir.1990) (finding resubstitution of employee in place of United States separable and reviewable under *City of Waco* ); *In re Adams*, 809 F.2d 1187, 1188–89 (5th Cir.1987) (same regarding the dismissal of bankruptcy appeal); *Gallea v. United States*, 779 F.2d 1403, 1404 (9th Cir.1986) (same regarding dismissal of United States in tort suit).

The plaintiffs, however, point to two cases that they claim are contrary to our result: *Tillman v. CSX Transp., Inc.*, 929 F.2d 1023 (5th Cir.), *cert. denied*, ——— U.S. ———, 112

S.Ct. 176, 116 L.Ed.2d 139 (1991), and *Washington Suburban Sanitary Comm'n v. CRS/Sirrine, Inc.*, 917 F.2d 834 (4th Cir. 1990). In both cases, although for different reasons, the respective courts of appeals held that they lacked jurisdiction to review orders permitting the joinder of a party that would destroy diversity jurisdiction. We believe that *Washington Suburban* is distinguishable and, to the extent that the reasoning in *Tillman* is contrary to our result here, we decline to follow it.

*Washington Suburban* is easily distinguishable. While that case involved the joinder of a party and a subsequent remand because joinder destroyed diversity, the only question presented was whether the district court had abused its discretion under 28 U.S.C. § 1447(e) in allowing joinder even though it would destroy diversity. *See Washington Suburban*, 917 F.2d at 835, 836 n. 4. As discussed more fully *infra* at 230 n. 8, we agree that this determination may well be unreviewable under 28 U.S.C. § 1447(d). That discretionary decision, however, is not what has been appealed in the present case. Rather, the issue appealed here—whether the court properly allowed the amendment adding the additional party when the statute of limitations had already expired—has important ramifications beyond simply determining whether the suit will be tried in federal or state court.

*Tillman* is less tractable. In *Tillman*, the district court allowed joinder through amendment even though it concluded that the party to be joined, the Louisiana Department of Transportation and Development, was immune from suit in federal court under the Eleventh Amendment and that its joinder would therefore destroy the court's subject matter jurisdiction and necessitate remand of the case. *See Tillman*, 929 F.2d at 1025–26 & n. 2. On appeal, the Fifth Circuit, applying *City of Waco*, 293 U.S. 140, 55 S.Ct. 6, separated the district court's decision allowing the joinder from its decision remanding the case and considered the appealability of each separately. *Tillman*, 929 F.2d at 1026. First, the court of appeals determined that 28 U.S.C. § 1447(d) prevented review of the remand portion of the order. *Id.* at 1026–28.

The court then considered the joinder decision and concluded that it lacked appellate jurisdiction because "the grant of leave to amend was an unreviewable interlocutory order." *Id.* at 1028–29.

The plaintiffs, however, rely on the following passage from *Tillman* for the proposition that 28 U.S.C. § 1447(d) bars appellate jurisdiction in the present case:

Consequently, having been erroneously remanded on § 1447(c) jurisdictional grounds, this case is irretrievably beyond anything we can do about it. We cannot review it by any means. We emphasize our complete inability to do anything about the trial court's joinder order, whether interlocutory or final, because what we cannot review we cannot by some juridical self-help get back to federal court.

*Id.* at 1029. This argument does not, however, carry the day for the plaintiffs.

■ First, the statement was pure dicta since the basis for the court's holding was its conclusion that the decision allowing joinder was interlocutory. *Id.* at 1024–25, 1028–29. More importantly, we disagree with the possible implication of the quoted material—that once an entire case has been remanded and the underlying remand cannot be reviewed, a prior order of the district court cannot, in any circumstances, be reviewed by the federal court of appeals. We believe, to the contrary, that if there is independent appellate jurisdiction over an issue under the governing federal statutes, the fact that the district court may have remanded the case cannot deprive the court of appeals of the jurisdiction granted to it by Congress. In other words, the issues over which we have jurisdiction remain within our jurisdiction until such time as the parties fail to appeal or we have issued a decision on appeal.

This result is supported by cases such as *Mitchell v. Carlson*, 896 F.2d 128 (5th Cir. 1990). There, the district court dismissed the United States as a defendant from a tort suit, resubstituted the original defendant, a federal employee, for the United States, and remanded the case to state court. *Id.* at 130. The court of appeals began its analysis by concluding that it lacked appellate jurisdiction over the remand portion of the order.

*Id.* at 131. Although it had concluded that the case was irrevocably remanded to the state court, the court of appeals went on to review, and reverse, the portion of the order resubstituting the individual defendant for the United States. *Id.* at 132–33, 136. There, the relevant portion of the case, the resubstitution order, was clearly part of the case remanded to the state court. In fact, similar to the present case, the essence of the defendant federal employee's complaint was that she would be subjected to suit in state court although she had a statutory right to be immune from suit. The court, however, had no doubt that it had the authority under 28 U.S.C. § 1291 to review the resubstitution order.[6] *Id.* at 132–33; *see also Aliota,* 984 F.2d at 1353.[7]

In sum, the district court's decision to permit a relation back amendment that allowed Yeager to be sued, even though the statute of limitations governing personal injury actions had run by the time the motion to amend was filed, preceded the remand both in logic and in fact has ramifications beyond merely determining the court's subject matter jurisdiction. As such, we conclude that the decision is severable under *City of Waco* and therefore that appellate review of that portion of the order is not barred by 28 U.S.C. § 1447(d).[8]

**B. Is the District Court's Decision Permitting the Relation Back Amendment Final Within the Meaning of 28 U.S.C. § 1291?**

█ Although the appeal is not barred by 28 U.S.C. § 1447(d), we still must determine whether the district court's decision is a "final decision" within the meaning of 28 U.S.C. § 1291. *See Aliota,* 984 F.2d at 1352–54. Generally, "[a] 'final decision' is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Praxis Properties, Inc. v. Colo-*

---

6. The court's appellate jurisdiction over the resubstitution order was based on its conclusion that the resubstitution was final under the collateral order doctrine because the federal employee was asserting an immunity from suit under the Westfall Act. *Id.* at 133.

7. Although we concluded in *Aliota* that we had jurisdiction over the remand portion of the order (thus no part of the case was irrevocably lodged in the state court), that decision was unrelated to our separate analysis of the resubstitution order. In particular, we never suggested that our jurisdiction over the resubstitution order was dependent on our also having jurisdiction over the remand. To the contrary, the fact that we felt it necessary to consider whether 28 U.S.C. § 1447(d) barred review of the resubstitution issue belies such a suggestion. *See Aliota,* 984 F.2d at 1353. Additionally, we specifically relied on *Mitchell, see Aliota,* 984 F.2d at 1353, which, as discussed above, was a case in which the court concluded that the remand portion of the order was not reviewable, *see Mitchell,* 896 F.2d at 131, to support our decision as to the reviewability of the resubstitution order.

8. The plaintiffs also argue that the district court's decision to allow joinder was governed by 28 U.S.C. § 1447(e) and that, since the district court's decision to allow joinder was based on a subsection of 28 U.S.C. § 1447, its review is barred by 28 U.S.C. § 1447(d). *See Washington Suburban,* 917 F.2d at 836 n. 5 ("We fail to see any reason to treat the grounds for remand authorized by § 1447(e) in a different way than the Supreme Court treated the grounds authorized in

§ 1447(c)."). While this argument may well be correct in so far as it relates to the district court's exercise of discretion to join a party under § 1447(e), it fails to recognize that the joinder at issue here consisted of two separate steps or decisions. First, the district court determined that the amendment of the complaint to add Yeager was appropriate and related back under Fed.R.Civ.P. 15(c). Then, in a second step of the analysis, the district court made the discretionary determination that joinder should be permitted even though it would defeat the court's subject matter jurisdiction by destroying diversity, the question addressed by 28 U.S.C. § 1447(e).

Each of these individual steps has distinctly different effects. As the court noted in *Washington Suburban,* the decision to allow the joinder there had no significant substantive effect on the rights of the parties beyond determining the forum in which the claims would be litigated. *Washington Suburban,* 917 F.2d at 836 n. 4. In the present case, however, the relation back portion of the decision clearly affected significant substantive rights in that they caused Yeager to lose the benefit of the expiration of Pennsylvania's statute of limitations, thereby subjecting Yeager to a suit from which he would otherwise be free. *Cf. Guaranty Trust Co. of N.Y. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945) (statutes of limitations considered substantive for purposes of *Erie* analysis). In short, this argument is merely a restatement of the plaintiffs' general § 1447(d) argument, and as discussed more fully, *supra,* the decision to allow the relation back amendment was separable under the doctrine of *City of Waco.*

*nial Savings Bank, S.L.A.,* 947 F.2d 49, 54 n. 5 (3d Cir.1991) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)); *see also Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *United States v. Bertoli,* 994 F.2d 1002, 1010 (3d Cir.1993). As we explained in *Praxis Properties,* "[t]his rule reflects federal policy against piecemeal appeals: 'a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits.'" 947 F.2d at 54 n. 5 (quoting *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981)).[9]

28 U.S.C. § 1291, however, is not limited solely to this traditional concept of finality. In *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Supreme Court "recognized a 'small class' of decisions that are appealable under § 1291 even though they do not terminate the underlying litigation." *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 275–76, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988). As explained in *Gulfstream Aerospace,* the Court has had many opportunities to consider and refine "the collateral-order exception to the final-judgment rule" of *Cohen* and has adopted

a three-pronged test to determine whether an order that does not finally resolve a litigation is nonetheless appealable under § 1291. First, the order must "conclusive-

ly determine the disputed question." Second, the order must "resolve an important issue completely separate from the merits of the action." Third and finally, the order must be "effectively unreviewable on appeal from a final judgment."

*Id.* at 276, 108 S.Ct. at 1136–37 (quoting *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2458). "If the order at issue fails to satisfy any one of these requirements, it is not appealable under the collateral-order exception to § 1291." *Id.* 485 U.S. at 276, 108 S.Ct. at 1137. Moreover, we have noted that "the collateral order doctrine always has been construed narrowly by this court, 'lest the exception swallow up the salutary general rule that only final orders may be appealed.'" *Praxis Properties,* 947 F.2d at 54 (quoting *Yakowicz v. Pennsylvania,* 683 F.2d 778, 783 n. 10 (3d Cir.1982) (internal quotation marks omitted)).

We begin with the third prong of the collateral order doctrine—that the order must "be effectively unreviewable on appeal from a final judgment," *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2458—because our conclusion that the present order fails to satisfy that prong eliminates the need to address the other two prongs of the doctrine. "[A]n order is 'effectively unreviewable' only 'where the order at issue involves "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." ' " *Praxis,* 947 F.2d at 58 (quoting *Lauro Lines S.R.L. v. Chas-*

9. We held in *McLaughlin v. ARCO Polymers, Inc.,* 721 F.2d 426, 428 n. 1 (3d Cir.1983), that an order *transferring* a case from federal to state court, because it had "divested the [federal] court of all control of the action[, was] appealable as a final order.". We will assume, without deciding, that this holding applies to a remand order. *See Foster v. Chesapeake Ins. Co.,* 933 F.2d 1207, 1211 n. 6 (3d Cir.) (noting, in dictum, that "it is difficult in principle to distinguish between an order of remand and an order of transfer for purposes of finality as in both situations the order effectively terminates the case in the federal courts"), *cert. denied,* —— U.S. ——, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991). *But see Massachusetts v. V & M Management, Inc.,* 929 F.2d 830, 833 (1st Cir.1991) ("A conceivable argument can be made that the order of remand is a final judgment since no further proceedings are contemplated in the federal courts. Nonetheless, the Supreme Court has stated that 'an order remand-

ing a removed action does not represent a final judgment reviewable by appeal.'" (quoting *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 352–53, 96 S.Ct. 584, 594, 46 L.Ed.2d 542 (1976) (other citation omitted)). However, the decision permitting the relation back amendment was not the order that terminated litigation in the federal courts. That order was the remand order, and as discussed in Part II.A., *supra,* the relation back amendment is separable from the (jurisdictional) remand decision. It would be internally contradictory, we believe, to conclude that the relation back amendment was sufficiently separate from the remand decision to avoid the prohibition on review contained in 28 U.S.C. § 1447(d), but, at the same time, conclude that it was sufficiently connected to the remand decision to be considered final in the sense that it effectively terminated the litigation in the federal courts.

*ser,* 490 U.S. 495, 499, 109 S.Ct. 1976, 1978, 104 L.Ed.2d 548 (1989) (internal quotation marks omitted)); *accord Zosky v. Boyer,* 856 F.2d 554, 561 (3d Cir.1988) ("To be appealable under ... the collateral-order doctrine ... an order must, among other things, be such that review postponed will, in effect, be review denied.").

As a starting proposition, if the relation back amendment were not tied to a remand order, there would be little question that review would be unavailable at this juncture. First, it cannot be contended that an order permitting (or denying) joinder of a party, standing alone, is appealable under the collateral order doctrine. As the court in *Fowler v. Merry,* 468 F.2d 242 (10th Cir.1972) (per curiam), stated:

> Although an order refusing or permitting the filing of an amended complaint joining an additional party is a discretionary action by the trial court and subject to appellate review as part of an ultimate final judgment, the order itself is not appealable as such in isolation. Nor are we persuaded that this case presents a situation indicating allowable review under the exceptional doctrine of *Cohen....*

*Id.* at 243. The harm in a wrongful joinder is the unnecessary cost and expense associated with litigation. The courts, however, have consistently rejected claims that the time and expense of litigating a suit that will later be reversed amounts to effective denial of review because those costs can never be recovered. Instead, for an order to be considered "effectively unreviewable," it must concern a right to be free from trial, not simply a right to be free from liability.

As the Supreme Court explained in relation to an assertion of immunity from civil process:

> The critical question, following *Mitchell,* is whether "the essence" of the claimed right is a right not to stand trial. This question is difficult because in some sense, all litigants who have a meritorious pretrial claim for dismissal can reasonably claim a right not to stand trial. But the final-judgment rule requires that except in certain narrow circumstances in which the right would be "irretrievably lost" absent

an immediate appeal, litigants must abide by the district court's judgments, and suffer the concomitant burden of a trial, until the end of proceedings before gaining appellate review.

*Van Cauwenberghe v. Biard,* 486 U.S. 517, 524, 108 S.Ct. 1945, 1950, 100 L.Ed.2d 517 (1988) (citation omitted); *see also Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 499, 109 S.Ct. 1976, 1978, 104 L.Ed.2d 548 (1989). The right not to be joined as a party is not significantly different from the myriad of other pretrial claims of a right to dismissal. But as is made clear in *Van Cauwenberghe,* these claims are insufficient to satisfy the third prong of the collateral order doctrine.

While the presence of the statute of limitations issue makes the question closer, we nevertheless conclude that failure to review the question at this point does not amount to an effective denial of review. The district court's decision to allow the amendment to relate back to a date prior to the expiration of the limitations period is effectively a denial of a motion to dismiss based on the statute of limitations. In *Van Cauwenberghe,* the Supreme Court stressed that "[b]ecause of the important interests furthered by the final-judgment rule, and the ease with which certain pretrial claims for dismissal may be alleged to entail the right not to stand trial, we should examine the nature of the right asserted with special care to determine whether an essential aspect of the claim is the right to be free of the burdens of a trial." 486 U.S. at 524–25, 108 S.Ct. at 1951 (citation omitted). While it could be argued that a statute of limitations entails a right not to be sued after the expiration of the limitations period, that contention was rejected by this court in connection with a criminal statute of limitations. *United States v. Levine,* 658 F.2d 113, 124–29 (3d Cir.1981); *accord United States v. Davis,* 873 F.2d 900, 908–09 (6th Cir.), *cert. denied,* 493 U.S. 923, 110 S.Ct. 292, 107 L.Ed.2d 271 (1989).

In *Levine,* we concluded that "[a]lthough statutes of limitations embody historically important rights of repose and fairness for defendants which are fundamental to our system of criminal law, the rights they protect are not irreparably lost absent immedi-

ate review." 658 F.2d at 125. As we explained:

> [T]he limitations statute here creates a safeguard against unfair convictions arising from delinquent prosecutions but does not entail a right to be free from trial. Therefore, the irreparable harm criterion which is needed to justify immediate appealability cannot be met. Indeed, the history, purpose and language of limitations statutes suggest that, unlike Double Jeopardy and Speech and Debate Clause claims, these laws create time and manner restrictions on, rather than permanent barriers to, prosecution.
>
> . . . .
>
> Further, the policies behind the double jeopardy protection and statutes of limitations emphasize the differing degree to which each proscribes the actual trial. Most of the concerns encompassed by the Double Jeopardy Clause focus on the *trial process* . . . .
>
> Limitations statutes, however, are intended to foreclose the potential for *inaccuracy* and *unfairness* that stale evidence and dull memories may occasion in an unduly delayed trial. They provide relief from extended pretrial anxieties and, by encouraging investigation of recent crimes, contribute to a rational allocation of prosecutorial resources. Like the Speedy Trial Clause, for which "it is the delay before trial, not the trial itself, that offends against the constitutional guarantee," it is primarily concerns of prosecutorial fairness and promptness, in contradistinction to insulation from repeated trials, that underlie limitations statutes. Consequently, pretrial review is neither critical nor always helpful in securing those interests.

*Id.* at 126–27 (quoting *United States v. Mc-Donald,* 435 U.S. 850, 861, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18 (1978)).

While "[a]dherence to this rule of finality has been particularly stringent in criminal prosecutions because 'the delays and disruptions attendant upon intermediate appeal,'

which the rule is designed to avoid, 'are especially inimical to the effective and fair administration of the criminal law,'" *Abney v. United States,* 431 U.S. 651, 657, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977) (quoting *DiBella v. United States,* 369 U.S. 121, 126, 82 S.Ct. 654, 658, 7 L.Ed.2d 614 (1962)), there is no reason to distinguish between the rights protected by criminal and civil statutes of limitations, and thus no reason to treat them differently in this context. Additionally, we note that statutes of limitations do not establish absolute guarantees that a party will not be sued after a certain date. Through a variety of legal and equitable principles, e.g., tolling, laches, or discovery rules, the time period in which a suit may be brought may extend far beyond the initial time period established in the applicable statute of limitations.[10]

Finally, we note that while we have found no case in which a federal court has directly addressed the question of the appealability of a statute of limitations decision under the collateral order doctrine, there are scores of cases in which the courts have operated under an assumption that these appeals are interlocutory, including a number in this circuit. *See, e.g., Juzwin v. Asbestos Corp.,* 900 F.2d 686 (3d Cir.) (interlocutory appeal from denial of summary judgment motion based on statute of limitations under 28 U.S.C. § 1292(b)), *cert. denied,* 498 U.S. 896, 111 S.Ct. 246, 112 L.Ed.2d 204 (1990); *Hopkins v. Kelsey–Hayes, Inc.,* 628 F.2d 801 (3d Cir. 1980) (same), *vacated on other grounds,* 455 U.S. 404, 102 S.Ct. 1137, 71 L.Ed.2d 250 (1982); *Galvan v. Hess Oil Virgin Islands Corp.,* 549 F.2d 281 (3d Cir.1977) (same); *see also Johnson v. Burken,* 930 F.2d 1202, 1207 (7th Cir.1991) (stating, in connection with a hypothetical on the law of the case doctrine, that "[t]he denial [of the motion to dismiss on the grounds that the statute of limitations had expired] is an interlocutory order and therefore not appealable at the time made").

This, however, still leaves the defendants' primary argument—that the validity of the

---

10. We of course do not mean by this discussion to suggest whether or not the denial of a motion to dismiss based on a statute of repose would be effectively unreviewable within the meaning of

the collateral order doctrine. That question is not before us, and we express no view as to its resolution.

relation back amendment will be *completely* unreviewable in state court. According to the defendants, "without a doubt, the district court order would be unreviewable unless appealed now.... Upon completion of trial in the state court, the appellate courts of Pennsylvania would not be authorized to review orders from the federal courts." Brief of the Appellees at 11–12. The defendants, however, have cited no authority in support of this contention, and we too have failed to discovered any. To the contrary, we are unaware of any principle that would foreclose the Pennsylvania appellate courts from reviewing the district court's decision to allow the relation back amendment.

While this issue would seem to arise with some frequency, we have been able to find surprisingly little law directly on point. One case, *Southern Leasing Corp. v. Tufts*, 167 Ariz. 133, 804 P.2d 1321 (Ariz.Ct.App.1991), however, is instructive. That case had been removed to federal court and then remanded for untimely removal. As part of its remand decision, the federal district court found that the defendant had been properly served with process. The state appeal, in turn, concerned whether issue preclusion barred a state court from making its own findings regarding the service of process. The Arizona Court of Appeals concluded that there was no issue preclusion because, under the Restatement (Second) of Judgments, issue preclusion does not attach if " 'the party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action.' " *Id.* at 134–35, 804 P.2d at 1322–23 (quoting Restatement (Second) of Judgments § 28(1)).

The court reasoned further:

The determinative issue in this case is whether issue preclusion prevents the state trial court from making its own findings on the issue of the service of process. We conclude that there is no issue preclusion in this case and set aside the order entered by the trial court on May 3, 1990.

....

The federal district court's remand order, based on its finding that Tufts was properly served and that the petition for removal was therefore not timely filed, cannot be reviewed by a federal court of appeals, either by direct appeal or by mandamus. Since Tufts could not have the federal district court's remand order reviewed in the federal system, there is no issue preclusion and he is free to litigate the issue in state court.

*Southern Leasing*, 167 Ariz. at 134–35, 804 P.2d at 1322–23.[11] We agree that this is the appropriate mode of analysis and conclude that it applies here. Because, as discussed above, the order allowing the relation back amendment in this case was interlocutory in nature, there was no opportunity for the decision to have been reviewed in the federal courts, and, as such, the decision has no preclusive effect on the state courts.

At best, we believe the district court's decision would fall within the law of the case doctrine. While the law of the case doctrine places some (discretionary) limitation on the state *trial* court's reconsideration of issues decided by the federal trial court, the law of the case doctrine would not limit the state *appellate* court's power to review the decision. *See* 1A James Wm. Moore et al., Moore's Federal Practice ¶ 0.169[2.–2], at 701 (2d ed. 1993) ("Orders entered by the district court prior to a remand order are not nulli-

11. While we have found no Pennsylvania cases directly on point, Pennsylvania appears generally to follow the concepts of claim preclusion set out in the Restatement (Second) of Judgments. *See Pennsylvania State Univ. v. County of Centre*, 532 Pa. 142, 148, 615 A.2d 303, 306 (1992) ("In *Clark v. Troutman*, 509 Pa. 336, 340, 502 A.2d 137, 139 (1985), this Court adopted the Restatement (Second) definition of issue preclusion...."); *see also Clark v. Troutman*, 509 Pa. 336, 340–44, 502 A.2d 137, 139–41 (1985) (relying on § 28 of the Restatement (Second) of Judgments in establish-

ing an exception to the general rule of issue preclusion under Pennsylvania law).

The Restatement (Second) of Judgments defines issue preclusion as follows:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 27 (1982), *as quoted in Pennsylvania State University*, 532 Pa. at 148, 615 A.2d at 306.

ties. Insofar as they are interlocutory and are included within the action or the part of the action remanded, they would ordinarily remain in effect, following the remand, until the state court took appropriate action to modify or set them aside."); *cf. Johnson v. Burken*, 930 F.2d 1202, 1207 (7th Cir.1991) ("We may assume that for purposes of applying the [law of the case] doctrine the proceedings in the state court were 'an earlier stage' of this litigation rather than a different case. '[T]he doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions[.] ...' So the district judge was entitled not to reexamine the state judge's ruling. But [the defendant] was equally entitled to appellate review of that ruling.").

We recognize that the state appellate courts might be inclined to grant deference to the federal district court, given that the issue concerns the application of a Federal Rule of Civil Procedure. But the state appellate courts are not legally bound to follow the federal district court's decision. Just as federal courts consider questions of state law in diversity actions, state courts are routinely called on to consider questions of federal law in a wide range of contexts. As the Supreme Court has noted, "[c]oncurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule." *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 507–08, 82 S.Ct. 519, 523, 7 L.Ed.2d 483 (1962).

Similarly, Chief Justice Rehnquist has noted in relation to the allocation (or reallocation) of functions between the state and federal courts:

> Alexander Hamilton wrote that "the national and state systems are to be regarded as ONE WHOLE." And, to this day, a significant portion of federal and state jurisdiction is concurrent. State courts are fully empowered to decide many issues of federal law. Federal courts, under their diversity jurisdiction, can hear and decide state law issues. These arrangements contemplate a large measure of intersystem cross-fertilization and collaboration.

Chief Justice William H. Rehnquist, Seen in a Glass Darkly: The Future of the Federal Courts, The Kastenmeier Lecture at the University of Wisconsin–Madison (Sept. 15, 1992) (quoting The Federalist No. 82 (Alexander Hamilton)); *see also Testa v. Katt*, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947) ("[T]he Rhode Island courts have jurisdiction adequate and appropriate under established local law to adjudicate this action. Under these circumstances the State courts are not free to refuse enforcement of petitioners' [federal law] claim." (footnote omitted)); *Grubb v. Public Utils. Comm'n*, 281 U.S. 470, 476, 50 S.Ct. 374, 377, 74 L.Ed. 972 (1930) (noting that cases involving federal questions could proceed simultaneously in the state and federal courts and that if a final judgment were entered in the state court first, that resolution of the issue would be binding on the federal court). At all events, whatever deference the state courts may or may not decide to give to the district court's familiarity with the governing law, that in no way limits the Pennsylvania courts' ability or authority to review the decision.

Nor do we believe that our result is contrary to *City of Waco*. The Court's decision in *City of Waco* was premised on its conclusion that the entire case had not been remanded to the state court. Since a severable portion of the case was dismissed, thereby eliminating any additional proceedings on that portion of the case in either the state or the federal courts, the decision to dismiss would have preclusive effects on the parties and was apparently considered final within the meaning of 28 U.S.C. § 1291. *See City of Waco*, 293 U.S. at 143, 55 S.Ct. at 7 ("Indisputably this order is the subject of an appeal; and, if not reversed or set aside, is conclusive upon the petitioner."); *see also Hill v. Chicago and Evanston R.R. Co.*, 140 U.S. 52, 11 S.Ct. 690, 35 L.Ed. 331 (1891).[12]

---

**12.** *Hill* was relied on by petitioner City of Waco as the basis for its argument that the dismissal would have preclusive effect on the parties. *See* Petition by the City of Waco for a Writ of Certiorari to the United State Circuit Court of Appeals for the Fifth Circuit and Brief in Support Thereof, at 12–13. The Supreme Court concluded in *Hill:*

This understanding of the Court's opinion is consonant with the grounds urged in the City of Waco's Petition for Certiorari, namely, that the court of appeals erred not in its legal analysis but in its factual conclusion that the trial court had remanded the entire case to the state court. *See* Petition by the City of Waco for a Writ of Certiorari to the United States Circuit Court of Appeals for the Fifth Circuit and Brief in Support Thereof, at 3, 5, 10–11, 12–13;[13] *see also* 1A Moore et al. *supra,* at 704 ("A partial remand of a removed action constitutes, in effect, a severance of the part that is remanded from that which is retained; and orders entered as to the part of the action retained should be subject to the usual principles of appellate review." (citing *City of Waco,* 293 U.S. 140, 55 S.Ct. 6)).

The present case, however, is markedly different. There is clearly no portion of this action that has not been remanded as there is no party or cause of action that has been

---

We are of the opinion that the decree of June 8, 1885, was a final decree, within the meaning of that term in the law respecting the appellate jurisdiction of this court, as to all matters determined by it, and that they are closed against any further consideration. It disposed of every matter of contention between the parties, except as to the amount of one item, and referred the case to a master to ascertain that. . . .

But there was no adjudication as to the payment of the amount to be ascertained by the master; that remained unsettled. It was, however, *a severable matter* from the other subjects of controversy and did not affect their determination. The fact that it was not disposed of did not change the finality of the decree as to the defendants against whom the bill was dismissed; that amount, or to whom made payable, did not concern them.

*Hill,* 140 U.S. at 54, 11 S.Ct. at 691 (emphasis added).

It is fair to surmise, given the petitioner's reliance on this case and the Court's lack of other explanation for its conclusion, that *Hill* was the basis for the Court's statement that the order was appealable and would be preclusive, as a final order, if not reversed or set aside. *See City of Waco,* 293 U.S. at 143, 55 S.Ct. at 7; *see also* 6 Moore et al., supra, ¶ 54.04[2.–2], at 54–42 to 54–43 (1993) (stating in regard to the rule of finality existing before adoption of the Federal Rules of Civil Procedure: "In cases involving multiple parties, however, the single unit theory had undergone a certain relaxation. In such cases, where an order adjudicated a separate and distinct claim, or terminated the action except for a separate and distinct claim, the judgment was final and could be reviewed without awaiting the determination of the separate matter affecting only the parties to such particular controversy.'" (footnotes omitted) (quoting *United States v. River Rouge Co.,* 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339 (1926)). In other words, the dismissal order in *City of Waco* was conclusive on the state court only because it was final, not because state courts cannot review pre-remand orders of the district court.

**13.** Petitioner, the City of Waco, made the following argument in Point 1 of its Brief in Support of a Petition for Certiorari:

This appellant "by cross-action, as permitted by the Texas practice, vouched in the United States Fidelity & Guaranty Company." (The foregoing words in quotation are quoted from the *opinion of the United States Circuit Court* in this cause). The District Court over this appellant's objection dismissed the Fidelity Company from the action and did so at a time when it had jurisdiction over all parties to the suit and its order of dismissal was a final and appealable order and unless appealed from becomes final under the authority of *Hill v. Chicago R.R. Co.,* 140 U.S. 52, 35 L.Ed. 331, 11 Sup.Ct.Rep. 690; and *Floody v. Chicago St. P.N.O. Ry. Co.,* [104 Minn. 132], 116 N.W. 111 [(1908)]. The city's right to retain the Fidelity Company in the case by cross-bill was permitted under the Texas practice and its appeal from the trial court's order dismissing the Fidelity Company should not and is not affected by an order remanding *a part of the case,* which order of remand was made by the trial court *after* the Fidelity Company had been dismissed *and after* this appellant had been deprived of its relief by cross-bill.

Appellant does not question the law as set out in the opinion in this cause but earnestly and respectfully insists that the Honorable United States Circuit Court of Appeals inadvertently erred as to the facts. If the trial court had remanded the entire cause and then had sought to dismiss the Fidelity Company or if the Federal court had never properly had jurisdiction, then the effort of the trial court to dismiss would have been void for lack of jurisdiction, but under the facts as they exist in this case the Federal court had taken jurisdiction and overruled a motion to remand and its dismissal of the Fidelity Company was a final and appealable order. . . . Under *Hill v. Chicago Ry., supra,* unless the action of the Federal trial court is reversed it becomes *res judicata* in this cause and prevents the Fidelity Company from being vouched in again in the State court.

Petition by the City of Waco for a Writ of Certiorari to the United State Circuit Court of Appeals for the Fifth Circuit and Brief in Support Thereof, at 12–13 (emphasis added).

dismissed in this case. *Compare City of Waco*, 293 U.S. 140, 55 S.Ct. 6 (dismissal of cross-action); *In re Adams*, 809 F.2d 1187, 1189 (5th Cir.1987) (dismissal of bankruptcy appeal); *Allen v. Ferguson*, 791 F.2d 611, 613–14 & n. 4 (7th Cir.1986) (dismissal of a private party); *Gallea v. United States*, 779 F.2d 1403, 1404 (9th Cir.1986) (dismissal of United States as a party in tort suit); *Armstrong v. Alabama Power Co.*, 667 F.2d 1385, 1387 (11th Cir.1982) (same). By citation to these cases, we do not mean to endorse their results. The appropriate question, we believe, is whether the decision being appealed is final under present finality doctrine (which would make it conclusive in the state court under principles of res judicata). The dismissal of a party or a particular cause of action does not necessarily make a decision final. And to the extent that cases such as *Allen*, 791 F.2d at 614 n. 4, suggest that *City of Waco* creates the finality, i.e., makes an order dismissing less than all of the defendants or claims final when it leads to remand, although that same order would not be final if the case remained in federal court, we disagree. In our view, the Supreme Court in *City of Waco* found the order at issue reviewable and conclusive *because* it was final under the existing doctrine; it did not create a new rule of, or exception to, the then governing principles of finality. At bottom, unlike in *City of Waco*, the order on which the defendants seek review is not a final decision under governing principles of finality.

In sum, because we are aware of no doctrine that would bar the state court from reviewing the federal district court's interlocutory decision to allow the relation back amendment, and because we do not believe that there is a right at stake the value of which effectively will be lost if the order is not immediately appealable, we conclude that the third prong of the collateral order doctrine has not been met. The decision to allow the relation back amendment therefore is not a final decision within the meaning of 28 U.S.C. § 1291. Accordingly, the appeal will be dismissed for lack of appellate jurisdiction.

* As to panel rehearing only.

SUR PETITION FOR PANEL REHEARING AND WITH SUGGESTION FOR REHEARING IN BANC

Sept. 24, 1993.

Present SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH and LEWIS, Circuit Judges, and ATKINS, District Judge.*

The petition for rehearing filed by Appellant, having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges in active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is DENIED.