**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 30, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: C AND M PROPERTIES,
L.L.C., a Utah Limited Liability
Company,

     Debtor,

\-------------------------------------

C AND M PROPERTIES, L.L.C., a
Utah Limited Liability Company,

     Plaintiff-Appellee,
v.

RICHARD D. BURBIDGE,
individually; JEFFERSON W.
GROSS, individually; BURBIDGE
AND MITCHELL; RICHARD D.
BURBIDGE; STEPHEN B.
MITCHELL; JEFFERSON W.
GROSS, Utah Corporations,

     Defendants-Appellants.

No. 07-4232

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 05-CV-121-DB)**

---

Duane H. Gillman (James S. Jardine and Matthew R. Lewis, of Ray, Quinney &
Nebeker, P.C., Salt Lake City, Utah, with him on the briefs), of Durham, Jones &
Pinegar, Salt Lake City, Utah, for Defendants-Appellants.

Peter W. Billings (Brad Holm and Alan K. Hyde of Holm, Wright, Hyde & Hays,
PLC, Phoenix, Arizona, and Douglas J. Payne of Fabian & Clendenin, Salt Lake

City, Utah with him on the brief), of Fabian & Clendenin, Salt Lake City, Utah for Plaintiff-Appellee.

---

Before **McCONNELL, EBEL,** and **GORSUCH,** Circuit Judges.

---

**GORSUCH**, Circuit Judge.

It's been more than four years since any federal judge had authority to hear this case. Even so, the litigation grinds on. Before the bankruptcy and district courts, the parties have bloodied each other in round after round of motions and arguments through year after year. They now appeal, asking us to sort out their dispute. But an order issued in December 2004 remanded this case to state court. That order divested the federal courts of subject matter jurisdiction over the parties' dispute. There is nothing left of this case in federal court – and hasn't been for years. Long ago the parties should have taken their fight to state court. They must now.

I

A

The history of this case is long and tangled, and the genesis of the parties' dispute has become shrouded in years of litigation, often over collateral questions. Even so, some appreciation of these twists and turns is essential to our legal analysis.

It all began nearly a decade ago when C&M Properties ("C&M") hired Burbidge & Mitchell ("Burbidge"), a law firm, to defend it in a lawsuit. Litigation begets litigation, of course, and C&M, through its counsel, Burbidge, added new parties and new claims, and the litigation multiplied. Eventually, the multiplicitous matters settled when C&M agreed to pay substantial sums to the other parties. But C&M was not at all happy with this result – or with its lawyers.

It was then that the real trouble began. In the Fall of 2001, C&M's members contemplated a multi-million dollar malpractice action against its old law firm. In the meantime, though, C&M's business began to crumble and, by December 2001, the company was forced to file for bankruptcy. When it came to disclosing the company's assets to its bankruptcy creditors, C&M's members discussed the need to reveal its potential malpractice claim against Burbidge. Ultimately, however, C&M's bankruptcy disclosures did not mention an imminent multi-million dollar suit against Burbidge, but instead informed creditors that the company might have "possible claims" of "unknown" value against a variety of entities and persons, including "former professionals." Bankruptcy proceedings proceeded quickly, and by the end of September 2002, a reorganization plan was approved.

Three months after it emerged from bankruptcy, C&M launched a $52 million malpractice suit against Burbidge in Utah state court. Burbidge promptly

- 3 -

removed the dispute to the federal bankruptcy court that had overseen C&M's bankruptcy proceedings. Once before the bankruptcy judge, Burbidge presented a motion for summary judgment, arguing that C&M's suit should be dismissed on the basis of judicial estoppel. Contending that C&M well knew of its potential malpractice claim before its bankruptcy, Burbidge submitted that the company deliberately chose to obscure that claim in its bankruptcy disclosures to keep its creditors in the dark about a significant potential asset to which they were entitled. In Burbidge's view, all this was a calculated effort by C&M to keep and pursue the lawsuit for its own benefit after a successful bankruptcy discharge, rather than being forced to hand over the potential suit to company creditors during the bankruptcy process. C&M should be judicially estopped from achieving this end, Burbidge submitted.

In July 2003, the bankruptcy court held that C&M's bankruptcy disclosures were "inexcusable" and "most likely criminal." But, the court held, judicial estoppel was not a doctrine recognized at that time in the Tenth Circuit. For this reason only, the bankruptcy court declined to grant summary judgment to Burbidge. Naturally, Burbidge sought to appeal this ruling to the district court (and later petitioned for review in this court by means of a writ of mandamus). But the district court rightly noted at the time (and we later agreed) that the denial of summary judgment is an interlocutory matter not normally appealable.

Back in front of the bankruptcy court after Burbidge's failed attempt at appeal and mandamus, C&M filed a motion to remand the case to the state court where it had begun. In August 2004, the bankruptcy court issued a report and recommendation to the district court agreeing with C&M. The bankruptcy court recommended remand for three reasons. First, it reasoned, the district court (and, by extension, bankruptcy court) lacked subject matter jurisdiction over the parties' dispute because it was not related to C&M's original bankruptcy proceeding. Second, even if subject matter jurisdiction existed, the court concluded, it was required to abstain from hearing the case under 28 U.S.C. § 1334(c)(2). Third, even if it was not mandatory for the district court to abstain, the court determined that it should exercise its discretion to do so under § 1334(c)(1) and 28 U.S.C. § 1452(b) "based upon considerations of comity and equity." Aplt. Ap. at 127-28. As we understand it, then, the bankruptcy court recommended remand under both 28 U.S.C. § 1447(c), requiring the district court to remand matters over which it lacks subject matter jurisdiction, and § 1452(b), pursuant to which the district court may remand a removed bankruptcy case "on any equitable ground." Of course, Burbidge sought review of this report and recommendation before the district court. But the district court found Burbidge's objection untimely and, on December 22, 2004, entered an order fully adopting the bankruptcy court's findings of fact and conclusions of law and remanding this case to state court.

B

One might think that the December 2004 order remanding this case to state court would have ended the parties' litigation in federal court, leaving the state courts of Utah to sort it out. Instead, Burbidge took the position that the district court's remand order somehow transformed the bankruptcy court's July 2003 denial of summary judgment on judicial estoppel grounds into a final judgment ripe for review. On this basis, Burbidge filed an appeal with the district court – the very same court that earlier refused to take an interlocutory appeal on this very issue and more recently remanded the entire case to state court – asking the court to review the bankruptcy court's previous denial of Burbidge's motion for summary judgment. In Burbidge's view, the Supreme Court's decision in *City of Waco, Texas v. United States Fid. & Guar. Co.*, 293 U.S. 140 (1934), permitted the district court to review the bankruptcy judge's denial of summary judgment because it "was drafted prior to and was separate from the remand decision." Mem. in Opp. to Mot. to Dismiss Appeal at 6 (quotation omitted).

In light of this development, the Utah state court that received the parties' dispute on remand put its case on hold. Why, after all, proceed to the merits of a dispute that a federal court might hold estopped? Meanwhile, back in federal court, the district court in September 2005 reversed and remanded the bankruptcy court's 2003 denial of summary judgment. The district court noted that, in the time since the bankruptcy court issued its ruling two years earlier finding that

judicial estoppel wasn't recognized by the Tenth Circuit, this court had issued *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005), adopting the doctrine. *See also Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151 (10th Cir. 2007). In light of this development, the district court decided to send the estoppel question back to the bankruptcy court once again, this time for it to reconsider its previous denial of summary judgment in light of *Johnson*.

In June 2006, after yet another round of briefing and argument, the bankruptcy court issued a new summary judgment decision. Given our decision in *Johnson*, and taking its cue from the district court's remand order, the bankruptcy court held C&M's claim judicially estopped, and granted summary judgment for Burbidge. Aplt. Ap. at 146-52. The court found that C&M failed to disclose the lawsuit in its bankruptcy filings, that its creditors were misled, and that C&M should not be permitted to pursue an asset wrongfully denied to its creditors.

Not to be outdone, C&M appealed the bankruptcy court's summary judgment determination to the district court; still more briefing and more argument followed. Eventually, in October 2007, the district court expressed its disagreement with the bankruptcy court about the proper application of *Johnson*

and reversed its grant of summary judgment. Dissatisfied, Burbidge appealed to us, and merits briefing before us ensued, with each side reiterating its views of the proper application of the judicial estoppel doctrine to the facts of their dispute.

II

In the course of briefing this appeal, neither party has questioned either our or the district court's authority to continue adjudicating this case after remand. But we must. Federal courts do not wield plenary jurisdiction, and attention to our "subject matter jurisdiction . . . is not a mere nicety of legal metaphysics," but instead rests on "the central principle of a free society that courts have finite bounds of authority." *U.S. Catholic Conf. v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 77 (1988). We must assure ourselves of federal subject matter jurisdiction even where, as here, both sides wish us to hear their dispute and our inability to do so would, regrettably, add delay and expense to the resolution of an already aged and costly lawsuit.

Before us, the parties have proceeded on the view that they have a final order amenable to appellate review. We cannot agree. Pursuant to 28 U.S.C. § 158(d), we can only assume jurisdiction over final orders entered by the district court. *In re Magic Circle Energy Corp.*, 889 F.2d 950, 953 (10th Cir. 1989). We have held that "to be final and appealable, the district court's order must end the litigation and leave nothing to be done except execute the judgment." *Id.*

- 8 -

(brackets omitted). All we have in this case, however, is the district court's reversal of the bankruptcy court's grant of summary judgment on judicial estoppel grounds. By its own terms, the district court's decision does not "end the litigation on the merits," but decides only that Burbidge is not yet entitled to judgment on the basis of judicial estoppel. In this, as in most cases, when summary judgment is denied or reversed, the next step is not to "execute the judgment," but to hold a trial. *See Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt, Inc.*, 385 U.S. 23, 25 (1966). The district court's order is therefore simply not final.[1]

Not only is the district court's order not final, it borders on the spectral. Everything that has transpired in bankruptcy and district court on the merits of C&M's malpractice since December, 2004 has taken place in the absence of any jurisdiction. Once the district court remanded C&M's malpractice claim to state court, it and the bankruptcy court lost authority to adjudicate the claim's merits, including the merits of Burbidge's judicial estoppel defense. C&M's malpractice

---

[1] In exceptional cases, of course, the denial of a motion for summary judgment is reviewable under the collateral order doctrine. For example, the Supreme Court has held that a denial of qualified immunity effectively decides with finality the defendant's immunity from suit and is thus susceptible to immediate appeal. *See Mitchell v. Forsyth*, 472 U.S. 511 (1985). But while a denial of summary judgment may decide with finality the collateral question of immunity from suit, the run-of-the-mine denial of summary judgment of the sort we have before us is not "effectively unreviewable on appeal from a final judgment," an essential requirement to qualify as a collateral order. *See id.* at 518 n.3; *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468-69 (1978).

claim resides in state court and any further litigation by the parties in federal court is beside the point, something like playing "air guitar" rather than the real thing, a sort of mimesis of litigation rather than an actual case or controversy. *Cf.* Pierre Schlag, *Spam Jurisprudence, Air Law, and the Rank Anxiety of Nothing Happening (A Report on the State of the Art)*, 97 Geo. L.J. 803 (2009) (discussing the "art" of the air guitar and describing some academic legal writing as "air law" when imitating the judicial task). It is long-settled that a remand order renders the district court "without jurisdiction" over remanded claims, such that any continued litigation over those claims becomes "a futile thing." *In re Bear River Drainage Dist.*, 267 F.2d 849, 851 (10th Cir. 1959). Put differently, the parties can do no more than shadowbox in federal court; the main event actually resides in state court. Any district court order putatively deciding any aspect of a claim remanded to state court is but an advisory opinion, the expression of stray sentiments by a court powerless to decide anything, or, as one circuit has put it, "so much hot air." *Daniels v. Liberty Mut. Ins. Co.*, 484 F.3d 884, 888 (7th Cir. 2007). *See also* U.S. Const. Art. III, sec. 2; *Kromer v. McNabb*, 308 F.2d 863, 865 (10th Cir. 1962) (a remand order "takes precedence" and district court should not take action on pending motions before or after remand); 14C Charles Alan Wright et al., Fed. Prac. & Proc. § 3739, at 491 (3d ed. 1998) ("[I]t is clear that an order of remand to state court ends the jurisdiction of the federal court over the case."); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714 (1996) ("When a

district court remands a case to a state court, the district court disassociates itself from the case entirely, retaining nothing of the matter on the federal court's docket."); *Christopher v. Stanley-Bostich, Inc.*, 240 F.3d 95, 100 (1st Cir. 2001) (a district court hearing merits arguments after remanding the case "impermissibly intrud[es] into a matter properly left to the state courts").

Allowing continued litigation in district court over a remanded claim risks not just a purely academic opinion about a claim really pending elsewhere, but a host of practical problems. It raises the possibility that the parties will make a mistaken guess about which forum should hear their case and needlessly devote time and resources in the wrong forum. It also leaves cases in legal limbo, partly in federal court, partly in state court, a result that does nothing to advance and much to undermine federal-state comity. Our case amply illustrates these problems. The parties have spent years, enormous energy, and no doubt heaps of money trying to hash out the potentially dispositive estoppel question in a federal court that is powerless to decide it. Meanwhile, the state court that *actually* possesses jurisdiction over their case understandably halted progress on the matter in deference to the district court's claim of authority over the case, waiting patiently for years for some (purely advisory) signal from the federal system

- 11 -

whether it thinks the matter should be dismissed on estoppel grounds or proceed to its merits. So it is that any real progress in this case ground to a halt long ago.[2]

What, then, is an appellate court to do in these strange circumstances? When both we and the district court lack jurisdiction to entertain the merits of the parties' dispute? Happily, our precedent points the way, permitting us to treat this appeal as an application for a writ of mandamus, and exercise that authority not to hear the merits but to direct the district court to vacate all orders entered by it and the bankruptcy court after the remand issued on December 22, 2004. *See State Farm Mut. Auto. Ins. Co. v. Scholes*, 601 F.2d 1151, 1154 (10th Cir. 1979); *accord Christopher*, 240 F.3d at 99 (1st Cir. 2001); *Three J Farms, Inc. v. Alton Box Bd. Co.*, 609 F.2d 112, 115 (4th Cir. 1979). Indeed, it is one of the traditional and most important offices of the writ "to confine an inferior court to a lawful exercise of its prescribed jurisdiction." *In re Antrobus*, 519 F.3d 1123, 1124 (10th Cir. 2008) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980) (per curiam)).

---

[2] This is not to say that district court may not, after remand, proceed to the merits of a separate and independent legal proceeding involving the award of attorney's fees or sanctions for the improper removal of the claim in the first place. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (district court could enter Fed. R. Civ. P. 11 award even after dismissal because it is a "separate and independent proceeding at law" that is "supplemental to" and does not involve a "judgment on the merits of" the original proceeding); *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1257 (3d Cir. 1996) (explaining that fee awards proceedings after remand are independent proceedings that do "not interfere with or even affect proceedings in state court" on the merits).

Of course, entitlement to the writ must be "clear and indisputable." *Id.* (quoting *Allied Chem.*, 449 U.S. at 35). But just these conditions are present in this case: everything that has transpired in the bankruptcy and district court since the entry of the remand order has been in the absence of any jurisdiction. Indeed we wish to emphasize that future litigants need not, as here, wait years for the *ultra vires* district court proceedings to culminate in what they consider to be a "final" order for us to make clear that the district court's proceedings are ineffectual. Parties are entitled to have us put a stop to proceedings purporting to adjudicate remanded claims as soon as the district court does as little as enter a scheduling or discovery order. *See Christopher*, 240 F.3d at 100 (mandamus appropriate to remedy district court order issued post-remand because the order "did two impermissible things: it was entered when there was no federal jurisdiction and it purported to tell the state courts what to do" with a claim pending in its court system); *Three J Farms*, 609 F.2d at 115 (mandamus appropriate when district court sought to proceed to the merits of a remanded case because the remand order "divested the district court of all jurisdiction in this case and precluded it from entertaining any further proceedings of any character").[3]

---

[3] Whether *any* order entered by the district court in a remanded claim actually pending in state court could ever be fairly described as "final" for purposes of appeal presents a nice question. Here, the district court's reversal of summary judgment clearly doesn't qualify. But, one may wonder, what if the

(continued...)

III

The parties dispute this analysis, contending instead that the Supreme Court's decision in *City of Waco* authorized the district court and bankruptcy court to continue adjudicating Burbidge's judicial estoppel defense.  They assure us that we may take jurisdiction over the merits of their appeal on the same basis.  Again, we cannot agree.  Decided over 70 years ago in a very different era, *City of Waco* did allow the federal courts to review certain orders in remanded cases.  But, by its terms, the decision does not pertain here.  We first proceed to outline *City of Waco*'s holding, and then explain why it bears no application to our case.

A

As the parties have acknowledged and even underscored, *City of Waco* is a short and somewhat cryptic decision whose import is less than clear, particularly

---

[3](...continued)
district court here purported to *grant* summary judgment and issue a Fed. R. Civ. P. 54 judgment in a case actually pending in state court?  May we accept an appeal over such a case only to reverse the district court and order all decisions after remand vacated?  Or is the preferable course to grant mandamus because a "final" order in federal court is, in some sense, literally impossible in an already remanded claim?  The question is more than a little metaphysical, because the result would be essentially the same in either case (vacating the district court's proceedings and enforcing the remand order), and, hopefully, our decision today will help avoid future proceedings from maturing so far as to present the question. *Cf. Kromer*, 308 F.2d at 865 ("Even if we assume that the denial of the motion to dismiss . . . is otherwise a final appealable order . . ., there is nothing to appeal from since the remand takes precedence."); *Estate of Harshman v. Jackson Hole Mtn. Resort Corp.*, 379 F.3d 1161, 1163 (10th Cir. 2004) (explaining that if district court lacks jurisdiction, at most "we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit").

- 14 -

in light of the fact that it predates the enactment of § 1447 and § 1452, modern principles of issue and claim preclusion, not to mention the adoption of the Federal Rules of Civil Procedure. *See Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n.13 (2006) (leaving open "the continued vitality of [*City of Waco*] in light of § 1447(d)"); *Osborn v. Haley*, 549 U.S. 225, 266 (2007) (Scalia, J., dissenting) ("The continuing vitality of *Waco* is dubious in light of more recent precedents."). Even so, the Supreme Court has not explicitly overruled *City of Waco* and we have continued to abide it, *see, e.g.*, *Kromer*, 308 F.2d at 865; *Jones v. Wal-Mart Stores, Inc.*, 1994 WL 387887, at 1-2 (10th Cir. 1994).

Understood in light of its original context and rationale, however, *City of Waco* may be read today as standing for one, but only one, important proposition: When a case contains multiple claims and the district court remands only some to state court, those remaining in federal court may be appealed within the federal system in the normal course. *See Daniels*, 484 F.3d at 888 ("[W]hen one case presents two distinct claims for relief, and the district court finally resolves one while remanding the other, the claim that was *not* remanded may be appealed within the federal system."); 1A James Wm. Moore et al., Moore's Fed. Prac. at 701 (2d ed. 1993) ("A partial remand of a removed action constitutes, in effect, a severance of the part that is remanded from that which is retained; and orders entered as to the part of the action retained should be subject to the usual principles of appellate review.") (citing *City of Waco*).

- 15 -

*First*, *City of Waco*'s context.  The plaintiff in the case sued the City in state court.  The City then vouched in a third party on a cross-complaint and removed the case to federal court.  293 U.S. at 141.  In a single decree, the federal district court dismissed the third party claim and remanded the rest of the case to state court.  The City then sought to appeal the dismissal of its third-party claim, but the Fifth Circuit understood the district court to have first remanded all of the claims, rendering the dismissal of the third-party claim moot and leaving "no case pending in the federal court."  *City of Waco v. U.S. Fid. & Guar. Co.*, 67 F.2d 785, 786 (5th Cir. 1933).  In turn, the Supreme Court took the case and, it seems, it did so dominantly to correct the Fifth Circuit's understanding of the facts.  The Court explained that the dismissal of the third party claim came before the remand order and thus that claim was not remanded; it remained in federal court all along and was reviewable in the normal course.  *City of Waco*, 293 U.S. at 143; *see also Powers v. Southland Corp.*, 4 F.3d 223, 235 (3d Cir. 1993) ("The Court's decision in *City of Waco* was premised on its conclusion that the entire case had not been remanded to the state court.").  Consistent with *City of Waco*'s facts, we have previously held that when a court grants summary judgment on a non-remanded claim, it may review that judgment even if other, surviving claims are remanded to state court.  *See Jones*, 1994 WL 387887, at 1-2.

To all this, one might object that, at least today, an order dismissing a third party complaint on the basis of improper joinder is generally treated not as a

reviewable final order, but as a non-reviewable interlocutory decision. *Baker v. Bray*, 701 F.2d 119, 121-22 (10th Cir. 1983) (holding that dismissal of third-party complaint was not a final and appealable order); 6 Charles Alan Wright et al., Fed. Prac. & Proc. § 1463, at 473 (2d ed. 1990). How then to make sense of the fact that *City of Waco* held the order before it reviewable? The answer lies in history. As Judge Becker explained in *Powers v. Southland Corp.*, in the days prior to adoption of the Federal Rules of Civil Procedure, federal courts applied a rather more flexible approach to finality, treating as final and preclusive many rulings we today would call interlocutory. 4 F.3d at 235 n.12 (citing 6 Moore's Federal Practice ¶ 54.04 (2d ed. 1993)); *see also* Michael D. Green, From Here to Attorney's Fees: Certainty, Efficiency, and Fairness in the Journey to the Appellate Courts, 69 Cornell L. Rev. 207, 292-94 (1984). Every indication from the available history of the *City of Waco* decision suggests that the dismissal order at issue there was just such an order.[4] We are convinced, as was Judge

---

[4] As *Powers* explains, before *City of Waco* reached the Supreme Court, the Fifth Circuit agreed with the City that the district court's dismissal of the third party complaint was a final and preclusive order, but held that the district court's remand order barred review of all other orders in the case. *City of Waco*, 67 F.2d at 785-86. The City then argued to the Supreme Court that the remand order didn't preclude review of the dismissal of the third party complaint because the dismissal order was a final and reviewable order with preclusive effect in subsequent state proceedings. *See* Petition by the City of Waco for a Writ of Certiorari to the United States Circuit Court of Appeals for the Fifth Circuit and Brief in Support Thereof, at 12-13 ("The District Court over this appellant's objection dismissed the Fidelity Company from the action and did so at a time when it had jurisdiction over all parties to the suit and its order of dismissal was a

(continued...)

Becker, that "the Supreme Court in *City of Waco* found the order at issue reviewable and conclusive because it was final under the existing doctrine; it did not create a new rule of, or exception to, the then governing principles of finality." *Powers*, 4 F.3d at 237 (emphasis omitted).

*Second*, *City of Waco*'s rationale. The fear animating the Court's decision plainly was that a party might fall between two stools – on the one hand, unable to obtain federal appellate review of a dismissed claim; on the other hand, unable to have a state court reconsider that claim on remand because the decision was a final and preclusive one under extant doctrine. Unless the Court permitted the possibility of federal appellate review of a final order concerning a claim that remained in federal court, it no doubt worried that a party could indeed be stuck without any avenue for review.

While such concerns are very real for unremanded claims remaining in federal court, they have no purchase with respect to remanded claims. Interlocutory decisions in remanded claims made by the district court prior to remand remain open to review and revision in state court; such orders carry no preclusive effect. When a case is remanded to state court, "it is only the forum

---

⁴(...continued)
final and appealable order and unless appealed from becomes final under the authority of *Hill v. Chicago E.R. Co.* . . . Under *Hill v. Chicago Ry. supra*, unless the action of the Federal trial court is reversed it becomes *res judicata* in this cause and prevents the Fidelity Company from being vouched in again in state court.").

designation that is conclusive." *Kircher*, 547 U.S. at 647. The state court is free to revisit any issue decided by the federal court in a remanded claim prior to remand, and is "perfectly free to reject the remanding court's reasoning." *Id.* As the Supreme Court in *Kircher* explained, "[c]ollateral estoppel should be no bar" to revisiting any issue when a remanded claim arrives in the state court. *Id.* This is so in part because, under contemporary preclusion principles, issue preclusion does not attach where "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." *Id.* (quoting Restatement (Second) of Judgments § 28(1) (1982)). It is also true, in part because, under our precedents, issue preclusion will not apply in the absence of "a valid and final judgment" to which resolution of a particular issue was necessary. *Garcia v. Tyson Foods, Inc.*, 534 F.3d 1320, 1330 (10th Cir. 2008) (quoting *Arizona v. California*, 530 U.S. 392, 414 (2000)). After all, when a claim is remanded to state court, there can of course be no final judgment or opportunity to appeal such a judgment; by definition, that's been left for the state courts.

B

Returning to our case, it quickly becomes clear that the Supreme Court's decision in *City of Waco* neither authorized the district court to take any action in this case following the December 2004 remand order, nor affords us jurisdiction over the merits of this appeal. *City of Waco* authorizes claims remaining in

- 19 -

federal court after a remand order to be appealed in the normal course. But no such claims exist here. This is not a case involving multiple claims, some remanded, some retained. The remand order in this case covered *all* of the parties' dispute. The issue the parties have asked the district court (and now us) to settle – whether C&M is judicially estopped from pursuing their malpractice claim – arises in the very malpractice claim the district court long ago shipped off to state court. *City of Waco* does nothing to authorize continued federal court litigation over claims pending in state court. To the contrary, as we have discussed, fighting in federal district court over issues in already remanded claims can do no more than risk advisory opinions and invite the possibility that a claim will drift along aimlessly for years, half in federal court and half in state court, at a great cost alike to the parties, courts, and essential principles of federal-state comity.

Neither is *City of Waco*'s fear of a party falling between two stools – unable to secure federal court review of an order that will be binding in state court – remotely at play. Issues decided by a district court prior to remand in remanded claims bear no preclusive effect in subsequent state court proceedings. And that can never be truer than here, where the order the district court sought to review after remand was the bankruptcy court's *denial* of summary judgment. A denial of summary judgment is a quintessential interlocutory order with no preclusive effect on the parties in *any* future proceedings. *See Garcia*, 534 F.3d

- 20 -

at 1329-30; *Switzerland Cheese*, 385 U.S. at 25; *see also* 10A Charles Alan Wright et al., Fed. Prac. & Proc. § 2712, at 214 (3d ed. 1998).

The district court understood the interlocutory nature of a denial of summary judgment when, prior to remand, it refused to entertain an appeal from the bankruptcy court's order denying summary judgment. But then, after entering its remand order, the district court changed course and agreed to entertain the parties' argument over the very same summary judgment order. Why? Burbidge apparently persuaded the court that its remand order rendered the bankruptcy court's denial of summary judgment back in 2003 – the very order the district court previously found to be interlocutory – now ripe for review. In Burbidge's words, "the remand order render[ed] all claims final and appealable." Mem. in Opp. to Mot. to Dismiss Appeal at 4 (quotation omitted).

Burbidge's theory is mistaken. An order denying summary judgment doesn't change its stripes with the entry of a remand order. If remand decisions could, somehow, transform summary judgment denials into final reviewable orders, we see no reason why the district court's other interlocutory decisions on any number of issues – denying a discovery request, admitting this piece of evidence, excluding that expert, and the like – wouldn't also become final decisions ripe for review. That, of course, is not the case. Interlocutory decisions remain interlocutory, subject to review and revision by the state trial court after remand. "[W]hat a state court could do in the first place it may also do on

- 21 -

remand." *Kircher*, 547 U.S. at 646.

At this juncture, we imagine Burbidge might ask: Even if it is not precluded from seeking reconsideration of the judicial estoppel issue in state court, might the state court still give some weight to the district court's reversal order? Perhaps, but that is a matter between Burbidge and the Utah courts. The critical point is that the Utah courts are not bound to defer to the bankruptcy court's or the district court's estoppel rulings. We are likewise confident that the federal courts' post-remand orders on the subject are not even the law of this case – after all, the "case" here was an extra-legal proceeding, in a very real sense no case at all.

It is possible that Burbidge might also complain: But won't having to decide the question of judicial estoppel enmesh the state court in questions of federal law? We readily acknowledge this may be true, but just as readily respond that state courts are regularly and rightly called on to decide questions of federal law, as they have throughout our history. "Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule. *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 507-08 (1962). *See also Powers*, 4 F.3d at 235 ("[A] significant portion of federal and state jurisdiction is concurrent. State courts are fully empowered to decide many issues of federal law. Federal courts, under their diversity jurisdiction, can hear

and decide state law issues.  These arrangements contemplate a large measure of intersystem cross-fertilization and collaboration.") (quoting William H. Rehnquist, Seen in a Glass Darkly:  The Future of the Federal Courts, Lecture at the University of Wisconsin-Madison (September 15, 1992)).

IV

This is a case whose duration and complexity might induce a faint feeling of familiarity in the wards of Jarndyce and Jarndyce.[5]  We are loathe to add to the duration and complexity of an already overlong and overly complex matter, let alone to deliver the unwelcome news that the parties have been litigating in vain in federal court for over four years based on a mistaken premise.  One might hope, if perhaps against hope, that the parties will see their way to ending voluntarily this tortuous, nearly decade-long dispute.  But whatever the parties do, one thing is certain: they cannot do it in federal court.  In December 2004, the district court remanded this case to state court.  Since then, the district and bankruptcy courts have lacked jurisdiction to do anything, and *City of Waco* supplies no way to avoid this conclusion.  Accordingly, we grant a writ of mandamus and remand this matter to the district court with instructions to vacate

---

[5]  "Jarndyce and Jarndyce drones on.  This scarecrow of a suit has, in course of time, become so complicated that no man alive knows what it means. . . .  Fair wards of court have faded into mothers and grandmothers; a long procession of Chancellors has come in and gone out; the legion of bills in the suit have been transformed into mere bills of mortality . . . but Jarndyce and Jarndyce still drags its dreary length before the court, perennially hopeless."  Charles Dickens, Bleak House 4-5 (Bantam 2006) (1853).

all orders entered by it and the bankruptcy court in this case after the December 22, 2004 remand order.

*So ordered.*