**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 25, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ANDREW JOHN YELLOWBEAR,
JR.,

       Petitioner-Appellant,

v.

ATTORNEY GENERAL OF THE
STATE OF WYOMING; SKIP
HORNECKER, in his official capacity
as Supervisor, Fremont County
Detention Center,

       Respondents-Appellees.

No. 09-8069
(D.C. No. 2:06-CV-00082-CAB)
(D. Wyo.)

NORTHERN ARAPAHO TRIBE,

       Amicus Curiae.

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**GORSUCH**, Circuit Judge.

Andrew John Yellowbear, Jr., a Wyoming state prisoner, seeks federal

habeas relief under 28 U.S.C. § 2254 from his state conviction for the murder of

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

his daughter. Mr. Yellowbear argues that the Wyoming state courts that heard his case lacked jurisdiction because the crime occurred in a federal Indian reservation. The Wyoming Supreme Court rejected this argument on direct appeal, explaining that the land in question is not within an Indian reservation. Later, a federal district court denied Mr. Yellowbear's § 2254 habeas petition challenging this ruling. Today, we affirm the district court's disposition.

* * *

Mr. Yellowbear was convicted of first degree murder in Wyoming state court after he inflicted "repetitive, abusive, blunt-force injuries" that killed his twenty-two-month-old daughter, Marcella Hope Yellowbear. *Yellowbear v. State*, 174 P.3d 1270, 1273 (Wyo. 2008). Throughout his state criminal proceedings, Mr. Yellowbear argued that the events in question occurred in Riverton, Wyoming, within the exterior boundaries of the Wind River Reservation. Accordingly, he submitted that Wyoming had no jurisdiction to try him in state court.

The Wyoming state courts consistently rejected Mr. Yellowbear's jurisdictional argument. Ultimately, when the Wyoming Supreme Court took up the question, it explained that a 1905 Act of Congress long ago diminished the Wind River Reservation and that the current boundaries of the reservation do not encompass the site of Mr. Yellowbear's crime. *Yellowbear*, 174 P.3d at 1282-84.

While his state case was unfolding, Mr. Yellowbear twice sought federal habeas relief, but both petitions were legally defective. First, before his state trial began, Mr. Yellowbear filed a § 2254 petition in federal district court. The district court dismissed the petition because § 2254 relief is not available to pre-conviction prisoners and Mr. Yellowbear had not exhausted his claim in state court. A panel of this court denied Mr. Yellowbear a certificate of appealability for the same reasons. *Yellowbear v. Wyo. Attorney Gen.*, 130 F. App'x 276, 277 (10th Cir. 2005).

Second, while his state trial was ongoing, Mr. Yellowbear filed a § 2241 petition in federal district court. Because Mr. Yellowbear still had not exhausted his claim, the district court denied his petition. By the time Mr. Yellowbear's appeal reached this court, however, the Wyoming Supreme Court had finally adjudicated his criminal case, and so Mr. Yellowbear had become a post-conviction prisoner and had exhausted his claim. In light of this, a panel of this court remanded the case to allow Mr. Yellowbear to re-characterize his petition as one under § 2254. *Yellowbear v. Wyo. Attorney Gen.*, 525 F.3d 921 (10th Cir. 2008).

Back in the district court for the third time, Mr. Yellowbear pursued his petition anew under § 2254. He urged the court to review his argument that his crime had occurred on an Indian reservation not subject to state jurisdiction, and

to do so *de novo* rather than under the more deferential review mandated by § 2254(d)(1).  He also requested an evidentiary hearing pursuant to § 2254(e).

The district court, however, rejected both requests, applied § 2254(d)(1), and denied Mr. Yellowbear's petition.  The district court explained that under § 2254(d)(1), when a state court has "adjudicated" the petitioner's claim "on the merits," a federal court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court."  Applying this framework, the district court first noted that Mr. Yellowbear had conceded the Wyoming Supreme Court's decision was not "contrary to" the relevant Supreme Court cases; it then proceeded to hold that the Wyoming Supreme Court's application of United States Supreme Court precedents was not "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

Following this decision, Mr. Yellowbear sought and the district court granted him a certificate of appealability to challenge its holdings that:  (1) review of Mr. Yellowbear's jurisdictional claim is constrained by § 2254(d)(1); (2) Mr. Yellowbear was not entitled to habeas relief under § 2254(d)(1) because the Wyoming Supreme Court's decision was not "an unreasonable application of" Supreme Court case law; and (3) Mr. Yellowbear was not entitled to an evidentiary hearing under § 2254(e).

\* \* \*

- 4 -

Before this court now, Mr. Yellowbear focuses his appeal on the district court's § 2254(d) holdings, urging us to review *de novo* whether the scene of his crime lies within an Indian reservation and thus outside the reach of state jurisdiction under 18 U.S.C. §§ 1151(a) and 1153, rather than review the question through § 2254(d)(1)'s deferential lens.[1] In doing so, Mr. Yellowbear does not appear to dispute that the Wyoming Supreme Court considered and rejected his jurisdictional arguments. Neither does he dispute that the state supreme court's ruling constitutes an "adjudicat[ion]" of his "claim" on its "merits," such that we would ordinarily be able to overturn it only if one of § 2254(d)(1)'s conditions are satisfied. Instead, Mr. Yellowbear appears to argue that, under the Constitution's Supremacy Clause, "[s]tate courts cannot rule on the extent of federal jurisdiction." Opening Br. at 14. Though it is not entirely clear from his briefing, as best we can tell Mr. Yellowbear seeks to suggest that § 2254(d)(1) is

---

[1] When identifying the issues presented for review in his opening brief, Mr. Yellowbear fleetingly refers to the district court's denial of his request for an evidentiary hearing under § 2254(e). Beyond that, however, he makes no further mention of the issue and so has waived the right to pursue the question. *See Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1277-78 (10th Cir. 1994) (White, J., sitting by designation). Relatedly, we deny Mr. Yellowbear's motion asking this court to take judicial notice of a number of items pursuant to Federal Rule of Evidence 201. Granting that motion would essentially afford Mr. Yellowbear the evidentiary hearing the district court denied, without first requiring him to address and overcome the district court's reasons for refusing such a hearing.

Separately pending before this court is a motion by the Northern Arapaho Tribe seeking leave to file an amicus brief. Because the Tribe possesses an adequate interest and presents arguments that are useful to this court, we grant the motion.

unconstitutional, at least as applied to him in this case, and so his appeal must be reviewed *de novo*.

On this score, we have our doubts. Mr. Yellowbear has not cited a single case establishing the rule he advances. To the contrary, the cases cited by the parties have reviewed jurisdictional decisions by state courts using § 2254(d)'s deferential standard of review. *See, e.g.*, *Burgess v. Watters*, 467 F.3d 676, 681 (7th Cir. 2006); *Lambert v. Blackwell*, 387 F.3d 210, 238 (3d Cir. 2004) (noting that § 2254(d) no longer predicates deference on a federal court's *de novo* finding of state court jurisdiction, and explaining that "a federal habeas court should generally presume that the state court properly exercised its jurisdiction").[2] Under our federal system, moreover, there is nothing inherently suspect about state courts deciding questions of federal law. State courts have done just this "regularly and rightly . . . throughout our history." *In re C & M Props., L.L.C.*, 563 F.3d 1156, 1167 (10th Cir. 2009). Indeed, the Supremacy Clause

---

[2] In deferring to the state court's factual findings, *Lambert* noted that the current version of § 2254(d) superseded a prior regime in which deference to state proceedings *did* depend on an initial finding that the state court had jurisdiction. It acknowledged speculation by some commentators that courts might "read" former requirements like this "back into" the new statute's provisions governing factual deference. *Lambert*, 387 F.3d at 238. But *Lambert* then proceeded to explain that, by its plain terms, § 2254(d) "surely lower[s] the level of scrutiny a federal court is entitled to apply to the issue of state court jurisdiction." *Id.* Thus, *Lambert*'s reasoning on *factual* deference appears to support our conclusion on *legal* deference. And, in any event, Mr. Yellowbear offers us no authority permitting us to "read back into" § 2254(d) terms from a prior law that Congress chose to supersede and that are inconsistent with the plain terms of the new law Congress has adopted in its place.

contemplates that state courts *will* decide questions of federal law, and concurrent jurisdiction has been the norm, not the exception, in our constitutional history. *See* U.S. Const. art. VI, cl. 2 (mandating that the "Judges of every State shall be bound" by federal law); *see also* The Federalist No. 82, at 493 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ("[T]he national and State systems are to be regarded as ONE WHOLE.  The courts of the latter will of course be natural auxiliaries to the execution of the laws of the Union."); William H. Rehnquist, Seen in a Glass Darkly: The Future of the Federal Courts, 1993 Wis. L. Rev. 1, 7. For his part, Mr. Yellowbear advances no persuasive argument or authority before this court suggesting that the Wyoming state courts' concurrent jurisdiction doesn't include the power to decide whether federal statutes divest them of criminal jurisdiction over the land in question.[3]

---

[3]  To the extent that Mr. Yellowbear's argument seems to rest on an assumption that § 2254(d)(1) deprives him of *any* means for obtaining *de novo* federal review of his jurisdictional arguments, it is mistaken for yet another reason.  The Supreme Court can generally review state court adjudications of federal questions, *see* U.S. Const. art. III, § 2; 28 U.S.C. § 1257, and this direct review, of course, is not constrained by § 2254(d)(1).  So it is that Mr. Yellowbear was free to — but, as far as we can tell, did not — seek *de novo* Supreme Court review of the Wyoming Supreme Court's adverse jurisdictional ruling.  *Cf. Hagen v. Utah*, 510 U.S. 399 (1994) (reviewing Utah Supreme Court's decision that Congress diminished Uintah Indian Reservation).  And to the extent that Mr. Yellowbear seems to worry that federal courts might be "bound" by state court jurisdictional decisions, that concern also rests on a mistaken view of our federal system.  A state court's decision on a federal question generally does not preclude a federal court from subsequently reaching a contrary conclusion.  *See Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2007) ("It is beyond cavil that we are not bound by a state court interpretation of federal law . . . ." (internal

(continued...)

In the end, however, whether we review the Wyoming Supreme Court's decision using § 2254(d)(1)'s deferential standard or *de novo* makes no difference to the outcome of this case. Not only has Mr. Yellowbear failed to give us any reason to think the Wyoming Supreme Court's rejection of his jurisdictional argument was an objectively unreasonable application of Supreme Court precedent; he has also failed to give us any reason to think that decision was incorrect. Neither, given the thorough and detailed attention the Wyoming Supreme Court committed to the question, can we see anything that might be gained by repeating its analysis here. Instead, we direct the reader to that court's careful exposition of the question, *see Yellowbear*, 174 P.3d at 1273-84, and confirm that Mr. Yellowbear has not presented to this court any argument calling into question the correctness of that decision.[4]

* * *

---

[3](...continued)
quotation marks omitted)).

[4] Before us, Mr. Yellowbear seeks to raise two new arguments he hadn't pursued before. First, he argues that principles of issue preclusion barred the Wyoming Supreme Court from reaching the conclusion it did. Second, he argues that the site of his crime was an Indian allotment and thus "Indian country" under 18 U.S.C. § 1151(c). Various problems attend each of these arguments. It suffices for current purposes, however, to note that Mr. Yellowbear failed to present either argument to the state courts in his criminal proceedings. Under § 2254(b)(1)(A), the validity of which Mr. Yellowbear does not challenge, federal courts are prohibited from granting writs of habeas corpus where, as here, the applicant has not "exhausted the remedies available in the courts of the State." Neither has Mr. Yellowbear sought to show that any exception to this exhaustion requirement pertains in his case. *See* 28 U.S.C. § 2254(b)(1)(B)(i)-(ii).

The district court's judgment is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge